No. 59,393

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON; WILLIAM E. FRANKLIN, JOHNNA LINGLE, ROBERT C. BACON, JANET T. LEICK, and BRUCE R. CRAIG, as Commissioners for said Board; DONALD J. CURRY, as County Clerk of said County; WILLIAM O'BRIEN, as County Treasurer of said County; and PRATHER H. BROWN, JR., as County Appraiser of said County; *Appellants and Cross Appellees*, v. MARY R. GREENHAW, KANSAS LAND DEVELOPMENT COMPANY, and THE BOARD OF TAX APPEALS OF THE STATE OF KANSAS, *Appellees and Cross-Appellants*.

(734 P.2d 1125)

Opinion filed March 27, 1987.

*Bernis G. Terry*, assistant county counselor, argued the cause, and *Philip S. Harness*, county counselor, was with him on the briefs for appellants.

*Robert C. Londerholm*, of Hackler, Londerholm, Corder, Martin & Hackler, Chartered, of Olathe, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

LOCKETT, J.: The Johnson County Board of County Commissioners, the county clerk, the county treasurer, and the county appraiser (County) appeal from a judgment of the Johnson County District Court affirming a decision of the Board of Tax Appeals (BOTA) reducing the valuation of certain real estate owned by Mary R. Greenhaw and leased by Kansas Land Development Company.

Appellee Mary R. Greenhaw is the title owner of a 55.9-acre tract of land located at the northwest corner of College Boulevard and Quivira Road in Overland Park, Kansas. The land was

undeveloped and zoned for agricultural use. As a result of a 1969 court-ordered, county-wide reappraisal, the land was valued at $1,275 per acre.

In 1973, Greenhaw leased the land to appellee Kansas Land Development Company (KLDC) for 82 years. The lessee agreed to pay rent at $44,000 per year until 1979, and at that time the rent was to increase to $64,000 per year. In addition, after the property was fully developed, the lessor was to receive a percentage of the rent paid by the sublessees. The lessee had the right to use the land for any purpose, the right to mortgage the land to its full value, and the option to purchase the real estate. The lessor retained only the right of ownership.

In 1974, Kansas Land Development filed plans with the Overland Park planning commission for a planned unit development consisting largely of single and multi-family dwellings to be known as Quivira Falls. The development was to cover approximately 207 acres, including the 55.9 acres leased from Greenhaw.

In 1979, the county appraiser discovered the existence of the long-term lease and determined that, because of the lease, the use of the property had changed from agricultural to commercial. He therefore changed the valuation of the property from $1,275 per acre to $17,611 per acre. Greenhaw and Kansas Land Development paid the higher tax assessments for the years 1980, 1981, and 1982 under protest. Application for refund of the taxes paid under protest was filed pursuant to K.S.A. 1986 Supp. 79-2005.

BOTA consolidated the appeals. Following a hearing, BOTA held that: (1) for all practical and legal purposes, Greenhaw's lease of the property was similar to a sale of the property and, therefore, should be treated as a sale for purposes of real property taxation; and (2) the use of the land had not changed from agricultural to commercial but was agricultural, vacant land awaiting future development. It said that unless Greenhaw's long-term lease was treated like a sale when applying the value appraisal procedures and methods employed by the Johnson County Appraiser for similar property, the valuation placed on the appellees' property was not uniform and equal as required by Article 11, Section 1 of the Kansas Constitution. BOTA ordered

the county to recompute the 1980-1983 tax liability and to refund the excess taxes paid, plus interest.

The County then appealed to the district court. The district court found that under these facts BOTA had not acted arbitrarily or capriciously when it concluded that for purposes of ad valorem taxation, in order to meet the uniform and equal requirement of our state constitution, the lease must be treated as a sale. It also held that BOTA had not acted arbitrarily or capriciously when it determined that no change in the use of Greenhaw's land had occurred and it ordered the County to recompute the 1980-1982 taxes. The County appeals those findings. In addition, the district court found that BOTA erred by including the 1983 tax year in its order and by requiring the County to pay interest on the refund. Appellees Greenhaw and Kansas Land Development cross-appeal.

## Jurisdiction

The County asserts that neither BOTA nor the district court had jurisdiction under K.S.A. 1986 Supp. 79-2005 to find the valuation to be in violation of the uniform and equal clause of the Kansas Constitution. In order to grant relief under the statute, it argues that both were required to find the county appraiser's valuation was illegal or void.

The appellees brought this tax protest pursuant to K.S.A. 1986 Supp. 79-2005(b), which provides:

"If the grounds of such protest shall be that the valuation or assessment of the property upon which the taxes so protested are levied is illegal or void, such statement shall further state the exact amount of valuation or assessment which the taxpayer admits to be valid and the exact portion of such taxes which is being protested."

Both BOTA and the district court found the valuation to be in violation of the uniform and equal clause of the Kansas Constitution. We agree that a valuation contrary to the principles of the Constitution is an illegal or void valuation. If this long-term lease should be treated the same as a sale, then the valuation assessed by the County was in violation of the uniform and equal clause of the Constitution because the County treated other similar undeveloped land in a different manner. Under such circumstances, the county appraiser's action would be unconstitutional,

and BOTA and the district court, therefore, had jurisdiction to hear the protest under 79-2005(b).

## Lease Like a Sale

The County contends that BOTA and the district court erred in finding that the long-term lease to Kansas Land Development should be treated as a sale for the purpose of taxation.

Here, the question raised on appeal is one of law and not one of fact. The interpretation of a statute is a question of law and it is the function of a court to interpret a statute to give it the effect intended by the legislature. In reviewing questions of law, both the trial court and the appellate courts may substitute their judgment for that of the agency only where the statute is clear and the administrative ruling erroneous. Ordinarily, the interpretation placed on a statute by the administrative agency charged with its enforcement is entitled to judicial deference and may be of controlling significance. *Wallis v. Secretary of Kans. Dept. of Human Resources,* 236 Kan. 97, 101, 689 P.2d 787 (1984).

The County correctly states that short-term leases with options to buy are treated as leases, rather than sales. In *Bras v. Sheffield,* 49 Kan. 702, 31 Pac. 306 (1892), this court held that where the owner of land leases it for a period of five years at a stipulated annual rental and the contract of lease contains a stipulation that the renters shall have the right, at the expiration of the lease, to purchase the premises, if they shall so elect, at a fixed price, there is no completed sale. The court said that renters do not acquire any estate in the land beyond the leasehold interest until they have elected to accept the offer and have paid or tendered the purchase price stipulated in the contract.

There are no Kansas cases, however, discussing the status of long-term or perpetual leases. Other jurisdictions have found that such leases should be treated as a sale. "Where there is a lease in perpetuity, such as a lease for 99 years renewable forever, or a grant of land with a reservation of a ground rent, the tenant or grantee may be considered the owner for purposes of taxation, and the land may be taxed to him." 71 Am. Jur. 2d, State and Local Taxation § 209. See *J. W. Perry Co. v. Norfolk,* 220 U.S. 472, 55 L. Ed. 548, 31 S. Ct. 465 (1911); *DeKalb County & c.*

*Assessors v. Harris & Co.*, 248 Ga. 277, 282 S.E.2d 880 (1981); *Penick v. Atkinson*, 139 Ga. 649, 77 S.E. 1055 (1913); *Gilberton Fuels, Inc., v. P. & R. C. & I. Co.*, 342 Pa. 192, 20 A.2d 217 (1941); Annot., 59 A.L.R. 701; *cf. Indian Head Nat'l Bank v. City of Portsmouth*, 117 N.H. 954, 379 A.2d 1270 (1977).

A leasehold estate, except an oil and gas lease, is real estate under Kansas law. A leasehold estate is not subject to real estate taxation. Instead, a unitary assessment method is used in which one value is assigned to a lot or tract of real estate and one tax is assessed and levied thereon. The practical reasons for not assessing and levying real property taxes against leases are discussed in Zinn, *The Real Estate Lease in Kansas: Some Problems of Characterization*, 17 Kan. L. Rev. 707, 725 (1969):

"The paramount reason appears to be that taxation of divided interests in real property is not within the scheme of the Kansas taxation statutes. Thus, in compiling the real estate assessment rolls, the county clerk is required only to consult the transfer record in his office, the records and plats in the office of the register of deeds, and reports from United States land offices, in obtaining information pertaining to ownership of real property. Moreover, the county assessor is to compute taxes to be levied only on tracts or lots of real property in the names of the owners thereof. Neither the county clerk nor the county assessor is required to search out divided ownerships created by leases, many of which are unrecorded. To impose this search on county clerks and assessors would perhaps prohibitively increase the administrative burdens placed on those county officials, and would eliminate the certainty now present in the unitary assessment method. Furthermore, because the assessor is required to value both land and improvements thereon, and the values are to consider the earning capacity as indicated by lease price and reasonable rental value, it would appear that no loss in tax funds is occasioned by not separately assessing and levying a tax upon the leasehold interest of the lessee and the reversionary interest of the lessor."

As noted, other courts have found that perpetual leases are similar to a sale and have taxed the property as a sale. We are not required to determine that issue in this case. BOTA did not find that taxes should be assessed against the lease, but under these facts the lease should be treated as similar to a sale. It said that, to observe uniformity and equality in the valuation of property for ad valorem tax purposes in Johnson County, the practices and procedures of the county appraiser require this long-term lease to be treated like a sale.

The lease in this case is for 82 years. The lessee has absolute,

unfettered use of the property. The lessor is required to assist the applicant in placing a mortgage or other encumbrance on the property and to join the lessee in any tax protest or other proceeding concerning title, and the lessee must pay all taxes and special assessments and insurance on the property. Title to all buildings and improvements on the property is in Kansas Land Development, which may sublet the premises to anyone.

The main right the lessor retains is a small reversionary interest in the property. A land appraiser, testifying as an expert witness, presented evidence at trial concerning the value of the lessor's and lessee's interests. He testified that the lessee's interest in the property constituted a large portion of the total value of the property and the lessor's reversionary interest constituted only a miniscule portion of the value of the property.

The right to equal treatment in matters of taxation is a protected right under Article 11, Section 1 of the Constitution of the State of Kansas. BOTA would be correct in finding that Greenhaw's long-term lease should be treated as a sale if it is necessary to preserve equal treatment and the rule of uniformity in Johnson County. To determine whether BOTA was correct, we must answer the other questions presented in the appeal.

## Change in Use

All non-exempt property in this state is subject to taxation as prescribed in Chapter 79 of the Kansas Statutes. Each parcel of real property must be appraised at its fair market value. K.S.A. 79-501. Article 11, Section 1 of our state constitution requires a uniform and equal rate of assessment and taxation. To comply with these requirements, all real property in Johnson County was appraised in 1969.

At the BOTA hearing, the county appraiser testified that, in order to maintain county-wide equalization of undeveloped real property, he ignored the sales of undeveloped land. In fairness to the property owners and purchasers, he left undeveloped properties on the tax rolls at the lower 1969 appraised values. The sale of undeveloped land for more than its 1969 assessed value did not trigger a change in use or require the land to be reevaluated for taxation. Neither the sale of land to a developer, rezoning the land from agricultural to commercial, platting the

property, nor other paper transactions or non-physical changes in the undeveloped property were considered as a change in use. The county appraiser testified that the act that triggered a change in use was the actual physical development of the land. After physical development commenced, the property would be reassessed at its higher value.

To show that Greenhaw's land was not taxed uniformly with other similar undeveloped neighboring tracts, the appellees introduced evidence of 28 comparable undeveloped neighboring tracts still appraised at their 1969 valuation. The evidence showed that the valuation on Greenhaw's property in 1980-1981 was between 11 and 16 times higher than the valuation of the 28 tracts. This disparity in value was due to the county appraiser's determination that Greenhaw's property had changed in use from agricultural to commercial land due to the income derived from the long-term lease.

BOTA found that, though Greenhaw's land had been leased for a long term in 1973, the use of the property had not changed but was still agricultural, vacant land awaiting future development in 1983. It concluded that, in order to achieve uniform and equal treatment with other similar undeveloped land, the valuation of Greenhaw's property had to be restored to the valuation established in the 1969 base year. The district court found that the land was undeveloped when BOTA issued its decision, and that the lessee under its long-term lease was not developing the land, but merely holding it pending development.

The County contends that BOTA and the district court erred in finding that the use of the property had not changed. The County argues that Greenhaw had changed the use from agricultural to commercial when the land was leased. The County bases its argument on *In re Board of Johnson County Comm'rs*, 225 Kan. 517, 592 P.2d 875 (1979). There, certain real and personal property owned by a for-profit corporation was leased to a nonprofit corporation and used exclusively by the nonprofit corporation. The lessor claimed the property was exempt from ad valorem taxation under what is now K.S.A. 1986 Supp. 79-201b *First* because of its exclusive use by a nonprofit corporation. We found there was a simultaneous use of the property. The owner leased its property and received a profit from the investment even

though it was used by a qualifying tax-exempt entity. The lessor was therefore subject to the ad valorem tax. K.S.A. 1986 Supp. 79-201 deals with exemptions from taxation and is not applicable.

The County argues that the 28 tracts are not similar to the land in question because those tracts are not subject to long-term leases. It contends that BOTA ignored the earning capacity as indicated by the lease price or by capitalization of net income and the rental or reasonable value of net income, that both BOTA and the district court failed to recognize that subsections (f) and (g) of K.S.A. 79-503a provide that productivity and earning capacity also determine the valuation of land for taxation, and that the valuation of property is determined not only by the market price but by the income derived from a long-term lease.

K.S.A. 79-503a sets out the factors to be considered for appraising land at its fair market value. "Fair market value" means the amount of money that a well-informed buyer is justified in paying and a well-informed seller is justified in accepting for property in an open and competitive market. Sales are not the sole criteria for determining fair market value but are used in connection with cost, income, and other factors, i.e., the classification of lands and improvements, size, the effect of location on value, depreciation, cost of reproducing improvements, productivity, earning capacity, rental value, sale value, and comparison with values of other property of known or recognized value.

The appellees argue, however, that the county appraiser ignores sales as a basis for determining fair market value when he appraises undeveloped property. They contend that a sale of the property does not trigger reassessment by the county appraiser and that physical development is the factor which causes the appraiser to reassess the property, except where he discovers a long-term lease.

When determining the validity of an assessment of real property for uniformity and equality in the distribution of the burdens of taxation, the essential question is whether the standards prescribed in K.S.A 79-503a have been considered and applied by the taxing officials. The assessment of real property which takes into consideration only some of the pertinent statutory factors of K.S.A. 79-503a cannot be upheld where evidence indicates there

has not been a uniform and equal rate of assessment and taxation in the county.

The County argues that all land subject to a long-term lease is assessed at a uniform and equal rate, and where land is subject to a long-term lease an actual physical change is not a prerequisite for a change in use. It contends that four other tracts of land in the county subject to long-term leases were reassessed prior to their physical development.

Unfortunately, the record reveals that two of the leased lands were physically developed before the county appraiser's office discovered that the tracts of land had been leased. A third lease was discovered by accident and it was unknown how the fourth leased property was discovered. The county appraiser admitted that there is no clear policy as to when a lease of property constitutes a change of use. He stated that a lease between two farmers does not constitute a change in use, and that only nonagricultural leases of undeveloped land with terms of at least five and more probably not less than ten years are considered for a change in valuation.

Both BOTA and the district court determined that the haphazard fashion that was used by the appraiser to discover leased lands and to determine which of the leased lands should be subject to an increased valuation was improper. The procedure resulted in a nonuniform and unequal valuation of similar property.

Uniformity in taxation implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of valuation. Uniformity in taxation does not permit a systematic, arbitrary, or intentional higher valuation than that placed on other similar property within the same taxing district. Under the facts of this case, the assessment of Greenhaw's land was so arbitrary and grossly discriminatory that it destroyed uniformity and equality in the manner of fixing the assessed valuation and was illegal. BOTA and the district court were correct in determining that the long-term lease of Greenhaw's land should be treated like a sale and the valuation for assessment should be the same as that for comparable undeveloped neighboring tracts.

## ISSUES ON CROSS-APPEAL

### Interest on the Refund

The appellees contend that the district court erred as a matter or law in overruling that portion of the BOTA order which directed appellants to pay interest on the money refunded. The BOTA order specifically directed the County to pay interest on the amount of the tax ordered refunded, commencing 60 days after the order was certified, if not refunded by that time. The appellees argue that BOTA has the implied power under K.S.A. 1986 Supp. 79-2005 to award interest on taxes wrongfully collected. We disagree.

The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. *Szoboszlay v. Glessner*, 233 Kan. 475, 477, 664 P.2d 1327 (1983). In order to ascertain legislative intent, courts are not permitted to consider only an isolated part or parts of an act but are required to consider and construe together all parts thereof in pari materia. *Szoboszlay v. Glessner*, 233 Kan. at 478.

A survey of Chapter 79, Taxation, shows that the legislature has provided for payment of interest on refunded taxes under certain circumstances. For example, K.S.A. 79-1579 provides that upon the allowance of an abatement or refund of any part of an inheritance tax, interest at the rate of 12 percent per annum shall be paid from a special fund set up for such payment. K.S.A. 1986 Supp. 79-2005(1) provides that the taxing district may issue no-fund warrants where it does not have the money in the current budget year and shall then make a tax levy sufficient to pay such warrants and the interest thereon.

Other sections of Chapter 79, however, make no provision for payment of interest upon refunds. For example, in K.S.A. 1986 Supp. 79-1701a, the legislature has provided that taxpayers may receive a refund for the overpayment of taxes where the overpayment was due to a clerical error. The statute does not provide for payment of interest on the refund. K.S.A. 1986 Supp. 79-1702 also provides for a refund where taxes were improperly collected, but does not provide for interest. K.S.A. 79-1564(d)(4) provides for a refund of taxes which were paid on assets not

within the control of the administrator, executor, or deemed executor of an estate when he cannot collect that from the distributee, but does not provide for an award of interest.

The existence of specific statutes providing for the payment of interest contradicts the taxpayers' argument that they are entitled to interest on a refund of taxes under 79-2005. Under the rule of *expressio unius est exclusio alterius* (the expression of one excludes the other), the choice of the legislature to not provide for the payment of interest on certain refunds while expressly providing for such payment on other refunds indicates an intention to exclude from certain refunds the obligation of interest. Since 79-2005 does not specifically provide for the payment of interest except on no-fund warrants, the district court was correct in denying prejudgment interest.

### The 1983 Tax Award

Greenhaw and Kansas Land Development contend that the district court erred in striking all portions of the BOTA order which referred to tax year 1983.

The appellees had paid their taxes under protest for 1980, 1981, and 1982, and filed separate applications for refund for each. The BOTA order was entered on October 5, 1983, just prior to the issuance of the 1983 tax statements on November 1, 1983. The BOTA order stated that taxes should be recomputed for "the 1980, 1981, 1982 and 1983 (if applicable)" tax years. The district court determined that under 79-2005, BOTA had no jurisdiction to make an order that applied to any year other than one during which the taxes were paid under protest and found that "BOTA should delete any reference to the tax year 1983 from its order."

To protest payment of taxes, the taxpayer must file a written statement before or at the time of paying taxes stating the grounds on which the taxes are protested. K.S.A. 1986 Supp. 79-2005(a). Within 30 days after filing the written statement of protest, the taxpayer must file an application for refund with the State Board of Tax Appeals. K.S.A. 1986 Supp. 79-2005(e). When a determination is made as to the merits of an application for refund, the Board enters its order. K.S.A. 1986 Supp. 79-2005(i). Each of the other subsections of 79-2005 also refers to a refund. For example, K.S.A. 1986 Supp. 79-2005(j) states that if a tax-

payer fails to file an application for refund, the protest becomes null and void.

In *Shriver v. Board of County Commissioners*, 189 Kan. 548, 370 P.2d 124 (1962), this court considered whether the district court had jurisdiction in 1938 to enjoin the collection of taxes against trust property for years subsequent to the year 1937. The court said:

"The petition in that action made no reference to any taxes other than those for the year 1937, nor was any claim made for exemption for subsequent years in either the stipulation of facts or in the written protest. Thus, the only issue before the district court to adjudicate was the question of exemption from taxation for the year 1937. Jurisdiction may be defined as the power of a court to adjudicate concerning the subject matter in a particular case. [Citation omitted]. To acquire jurisdiction three essentials are necessary: *First,* the court must have general jurisdiction of the class of cases to which the one to be adjudged belongs; *second,* proper service of summons must be had upon the defendant or he voluntarily enters his appearance in the case, and *third,* the point decided must be, in substance and effect, within the issues framed by the pleadings and, as here, in the stipulation of facts and the written protest. [Citation omitted.] . . . But the third element, the point to be decided within the issues framed, presented *only* the question of exemption from taxation for the year 1937, hence a judgment purporting to enjoin the defendants from the collection of taxes for all years subsequent to 1937 was entirely outside the issue of the case." 189 Kan. at 553.

The court went on to say:

"When the plaintiffs invoked G.S. 1949, 79-2005 to pay the first half of the 1959 taxes under protest, they were bound by all its provisions. Had they wished to seek a judgment of the district court to recover the first half of the 1959 taxes, they should have filed an original action for that purpose within 30 days after payment under protest, or, as they did, make application to the board of tax appeals to determine the validity of their tax protest." 189 Kan. at 555.

See *McManaman v. Board of County Commissioners*, 205 Kan. 118, 468 P.2d 243 (1970), and *Cities Service Oil Co. v. Kronewitter,* 199 Kan. 228, 428 P.2d 804 (1967).

The appellees cite *Wirt v. Esrey*, 233 Kan. 300, 662 P.2d 1238 (1983), in support of their argument that BOTA has authority to issue an order affecting future taxes. The main issue in *Wirt* was whether BOTA had jurisdiction to consider the taxpayer's motion for refund of taxes paid under protest. The county contended that BOTA did not have jurisdiction to refund the taxes because the claim for refund was not first presented to the county board of equalization for determination. This court concluded that BOTA

did have jurisdiction to order a refund of taxes even though the claim for refund was not formally presented to the county board of equalization. *Wirt*, however, involved an equalization appeal brought under K.S.A. 79-1609, and is distinguishable from the present case.

K.S.A. 1986 Supp. 79-2005 requires that any person who wishes to protest taxes must first (1) pay the taxes; (2) file a written statement stating the grounds of protest; (3) and within 30 days thereafter commence an action in court or file an application with BOTA. The clear intent of 79-2005 is to require that taxpayers actually pay the taxes before allowing protest proceedings to be initiated. The assessment in question is made on an annual basis and is not on a continuing basis. Neither BOTA nor the district court have jurisdiction to act beyond the 1982 taxes or authority to order refund of such taxes found excessive. There is no support for the appellees' argument that BOTA has jurisdiction to order a reduction of taxes in future years. The district court did not err in ordering that that part of the BOTA order be stricken.

Affirmed.