(933 P.2d 167)

No. 74,962

BOARD OF COUNTY COMMISSIONERS, DOUGLAS COUNTY,
KANSAS, *Appellee*, v. DONALD E. CASHATT, *Appellant*.

534

Opinion filed February 28, 1997.

*James M. Jesse*, of Lawrence, for the appellant.

*Robert W. Fairchild* and *John Knox,* of Riling, Burkhead, Fairchild & Nitcher, Chartered, of Lawrence, for the appellee.

Before PIERRON, P.J., ROGG, S.J., and DAVID PRAGER, Chief Justice Retired, assigned.

PIERRON, J.: This appeal involves the valuation of property for tax purposes. The facts of this case illustrate the difficulties in creating equitable tax policies where commercial zones expand into residential areas.

Donald E. Cashatt appeals the decision of the district court in favor of the Board of County Commissioners of Douglas County (County) which found that the Board of Tax Appeals (BOTA) erroneously interpreted and applied the law in the valuation placed on Cashatt's home for purposes of computing the ad valorem tax. Cashatt argues the district court's ruling, which reinstated the County's valuation of the property, is unconstitutional since the valuation is not uniform and equal with other residential properties in the area; does not comport with the statutory requirements for valuing property; and is a taking of property without just compensation. Cashatt further argues that the district court's ruling violates the standards of review placed upon the district court in reviewing BOTA decisions.

The essential facts are uncontroverted. Cashatt and his wife have lived in a house located at 2714 Iowa Street in Lawrence for 29 years. The house, built in 1954, is a brick ranch-style, two bedroom home located on 40,627 square feet of land. The property has always been zoned "residential" by the City and classified as "residential urban" by the County. The uniqueness of the property has resulted from the transformation of Iowa Street into a commercial corridor. Cashatt's property is now surrounded, at least on Iowa Street, by commercial properties.

The County's valuation of Cashatt's property drastically jumped from 1993 to 1994. In 1993, the County valued the land at $16,240 and the improvement/house at $56,260 for a total value of $72,500.

In 1994, the County valued the land at $149,910 and the improvement/house at $51,220 for a total value of $201,130. Not surprisingly, after receiving notice of the increased valuation, Cashatt filed an equalization appeal with the county appraiser's office. After failing to obtain a reduction from the County, Cashatt appealed to BOTA.

At the BOTA hearing, Cashatt presented no evidence other than his own statements. He told BOTA he could not understand how the value of his property could increase so dramatically over a 1-year period. He informed BOTA that he and his wife lived in the house and had no plans to move or use the property for commercial purposes.

The dramatic increase in the valuation of Cashatt's property seemed to be precipitated by his listing of the property for $365,000 on a 90-day listing. Cashatt explained the only reason he had listed the property was to get a certain real estate person to stop bothering him. He also explained he had listed the property with a high enough price so no one would buy it. When Cashatt called the appraiser's office to find out why the value of his property had gone up, he was informed that the 90-day listing and high asking price had triggered a red flag on the appraiser's computers, which led to a reappraisal.

At the BOTA hearing, the County called Marion Johnson, the County Appraiser, to illustrate how the property was appraised. Johnson stated the County was after the "fair market value" of the property, *i.e.*, what the property would sell for on the open market. He examined a cost approach and a market approach in valuing the property and decided the cost approach was more reflective of the fair market value of the property.

Because of the unique qualities of the property, Johnson testified the land value had to be determined manually. The value used was $3.69 per square foot. He arrived at this value by taking the $6 per square foot value placed on the commercial properties on both sides of Cashatt's property and the $1.20 per square foot value placed on the residential properties located to the east of Cashatt's property and arrived at a point somewhere in the middle. Appar-

ently, due to the uniqueness of the property, there were no good comparable sales available for comparison.

Johnson testified further that the assessed value of Cashatt's property was not figured using the 30% commercial assessed value, but was assessed at 11.5%, which is the residential assessment value. Johnson opined that the value the County placed on the property represented its fair market value.

BOTA ruled the value of the property should be $102,000, appraising the land at $50,780 or $1.25 per square foot and the dwelling at $51,220. Essentially, BOTA valued the land at residential use value, and the dwelling value remained the same. BOTA recognized the County based its appraisal on a determination that the highest and best use of the property was for commercial development. In reversing the County's appraisal, BOTA relied primarily on a BOTA decision, *In the Matter of Kenney*, Doc. No. 89-6903-EQ (March 7, 1990); and *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 734 P.2d 1125 (1987). *Kenney* is a BOTA decision and a copy of it was not included in the record on appeal.

BOTA based its decision on four main considerations. First, it found the subject property was not currently developed for commercial use and any developer would be required to raze the subject improvements, level the land for commercial use, and rezone the property with the city. Even though obtaining the rezoning would be no problem, BOTA found a substantial investment of time and money would be required to bring the property to commercial viability.

Second, BOTA stated that sustaining the County's present appraisal value would result in severe inequality among other similar homes.

Third, BOTA cautioned that it had grave misgivings in supporting a position which, it stated, would have the practical consequence of employing the taxation system to force homeowners from their homes. BOTA recognized the potential windfall the homeowner has in this situation, but identified the reality that higher taxes could force homeowners out of their residences.

Finally, BOTA found Cashatt's property should be appraised at its highest and best present possible use, namely, as a residential home.

The County filed for a reconsideration of BOTA's decision and argued that the only property which is to be appraised at its present "use value" is agricultural property. The County pointed out that there are no constitutional or statutory provisions for any other classification of property to be valued at use value and that Cashatt's property should be appraised at its highest and best use, namely, as commercial property, and its fair market value reflected that.

BOTA responded that its original order never discussed or even mentioned that any portions of the subject property should be valued or classified as agricultural land, which indicates it may not have understood the County's argument. BOTA maintained its decision.

The County sought review in district court, arguing it was entitled to judicial relief because BOTA's decision required the appraiser to appraise Cashatt's property at its use value and not its fair market value. The County once again stated the only property that is constitutionally allowed to be valued in such a manner is agricultural property. The district court ruled in favor of the County and found that BOTA had incorrectly interpreted and applied the law to the facts of the case. The court reinstated the County's valuation of Cashatt's property.

In its ruling, the court distinguished *Greenhaw* and *Kenney* and found the appraiser did take into account the zoning classification of Cashatt's property because he made an effort to decrease the value of the fair market value by the amount it would take to convert the property to usable commercial property.

The court stated the Kansas Constitution allows for the kind of relief granted here by BOTA, but only for agricultural and not residential property. The court advised Cashatt that his remedy would be a constitutional amendment.

This instant appeal is from the decision of the district court reversing BOTA and reinstating the appraiser's valuation. The fact that BOTA does not agree with the appraiser's valuation makes the district court's standard of review extremely important. Cashatt contends the court did not apply the proper standard of review in reviewing BOTA's decision. He argues the court's decision was

contrary to law, went outside the record, and failed to give the administrative decision its proper weight.

The issue before us is whether the district court reviewed BOTA's decision in the manner required by law. Under these circumstances:

"The scope of appellate review of an agency's action is to determine if the district court reviewed the action in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* The party asserting invalidity of the action has the burden of proving the invalidity. *Vakas v. Kansas Bd. of Healing Arts,* 248 Kan. 589, Syl. ¶ 4 [808 P.2d 1355 (1991)]." *Kaufman v. Kansas Dept. of SRS,* 248 Kan. 951, 959, 811 P.2d 876 (1991).

The scope of review for the district court is set out at K.S.A. 77-621(c) as follows:

"The court shall grant relief only if it determines any one or more of the following:

. . . .

(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

. . . .

"(4) the agency has erroneously interpreted or applied the law."

The district court concluded that BOTA erroneously interpreted and applied the law to the facts of this case on several issues. The propriety of this conclusion is the issue we must determine on appeal.

BOTA exists to decide matters of this nature, and therefore its decisions should be given great credence when acting within its area of expertise. See *Board of Johnson County Comm'rs v. Smith,* 18 Kan. App. 2d 662, 664, 857 P.2d 1386 (1993). BOTA reviews fair market value and uniformity determinations on a daily basis, and the Kansas Legislature has granted BOTA the power to "equalize the valuation and assessment of property throughout the state." K.S.A. 79-1409. See also *Wirt v. Esrey,* 233 Kan. 300, 314, 662 P.2d 1238 (1983) (BOTA is the paramount, lawfully constituted taxing authority in Kansas).

"Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. Whether an agency has erroneously interpreted or applied the law in an unconstitutional manner is a

question of law over which an appellate court's review is unlimited." *In re Tax Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, Syl. ¶ 3, 920 P.2d 947 (1996).

"Usually, interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to great judicial deference. An agency's interpretation of a challenged statute may be entitled to controlling significance in judicial proceedings. If there is a rational basis for the agency's interpretation, it should be upheld on judicial review." *Kansas Univ. Police Officers Ass'n v. Public Employee Relations Bd.*, 16 Kan. App. 2d 438, Syl. ¶ 2, 828 P.2d 369 (1991).

"Under the doctrine of operative construction, the court will give deference to an agency's interpretation of the law. If, however, the ruling court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps; the determination of an administrative body of questions of law is not conclusive, and, while persuasive, is not binding on the courts." *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, Syl. ¶ 9, 834 P.2d 368 (1992).

The court in *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 808-09, 667 P.2d 306 (1983), stated that "[n]either the district court nor this court can weigh conflicts in the evidence and substitute its judgment for that of the Board." However, since this case involves the interpretation of Kansas law, the appellate review of *that* issue is unlimited.

The County contends BOTA's decision was unreasonable, arbitrary, and capricious. The County cites *Northern Natural Gas Co. v. Williams*, 208 Kan. 407, 430, 493 P.2d 568, *cert. denied* 406 U.S. 967 (1972), for the court's definition of arbitrary as an action not based on reason or judgment and capricious as change without apparent regard to any laws. Professor David L. Ryan in Kansas Administrative Law § 23.04 (1991), explains that an agency such as BOTA acts arbitrarily or capriciously when its actions are overtly and patently in violation of the law, or are unreasonable and without foundation in fact.

The County argues the appraiser's valuation correctly reflected fair market value and BOTA based its valuation on "use value," which was unconstitutional, since only agricultural land can be valued based on use. The County maintains a property's current use is only relevant when determining how it will be classified and at what rate the taxes will be assessed, not for purposes of valuation. This was the reason Cashatt's property was assessed at a residential

rate. Essentially, the County argues BOTA incorrectly applied a "use value" theory in setting the value of the Cashatt's property. It states the district court correctly concluded BOTA was applying an incorrect rule of law; if the subject property is residential property, and has always been residential, then it must be appraised as residential, even if the sum is less than the fair market value.

On this issue, we believe the County is correct.

Agricultural property in Kansas is the only classification of property that is given a property tax value based on the use value. The Kansas Constitution provides:

> "Land devoted to agricultural use may be defined by law and valued for ad valorem tax purposes upon the basis of its agricultural income or agricultural productivity, actual or potential, and when so valued such land shall be assessed at the same percent of value and taxed at the same rate as real property subject to the provisions of section 1 of this article." Kan. Const. art. 11, § 12.

The County argues art. 11, § 12 provides authority for the valuation of agricultural land at its use value and there is no comparable constitutional provision for residential property. Therefore, Cashatt's property is subject to the same standard as all other property—fair market value.

Article 11, § 1 of the Kansas Constitution provides that "the legislature shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation." There is no question that, as the law of Kansas has developed, uniformity and equality must exist: " 'Uniformity in taxing implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of assessment as well as in the rate of taxation.' " *Beardmore v. Ling*, 203 Kan. 802, 806, 457 P.2d 117 (1969), *overruled on other grounds* 214 Kan. 690, 697, 522 P.2d 942 (1974).

The Supreme Court has recognized that "a valuation contrary to the principles of the Constitution is an illegal or void valuation." *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. at 121.

In *Addington v. Board of County Commissioners*, 191 Kan. 528, 531-32, 382 P.2d 315 (1963), the Supreme Court stated:

> "Uniformity in taxing implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of assessment as well as in the rate

of taxation. The duty to assess at full value is not supreme but yields to the duty to avoid discrimination. [Citations omitted.]

"It is apparent that uniformity is necessary in valuing property for assessment purposes so that the burden of taxation will be equal. [Citation omitted.] It makes no difference what basis of valuation is used, that is, what percentage of full value may be adopted, provided it be applied to all alike. The adoption of full value has no different effect in distributing the burden than would be gained by adopting thirty per cent, twenty-one per cent or twelve per cent as a basis, so long as either was applied uniformly. Uniformity of taxation does not permit a systematic, arbitrary or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property within the same taxing district; however, this uniformity and equality in a constitutional and statutory sense does not require mathematical exactitude in the assessment valuation of property for taxation. In the instant case if all the property in the county had been assessed at thirty per cent of its true value, plaintiff would have no cause to complain. The fraud upon plaintiff's rights resulted from the arbitrary distinction made between his elevator property and other property in the county. Mere excessiveness of an assessment or errors in judgment or mistakes in making unequal assessments will not invalidate an assessment, but the inequality or lack of uniformity, if knowingly high or intentionally or fraudulently made, will entitle the taxpayer to relief. [Citations omitted.]"

Cashatt argues the County has selected him for discriminatory treatment by subjecting him to taxes not imposed on other homeowners of the same class, namely residential. He claims he has suffered intentional systematic overvaluation by state officials; therefore, his equal protection rights have been violated. He cites cases explaining principles of equal protection as they relate to taxation, including *Northern Natural Gas Co. v. Williams*, 208 Kan. at 412, and *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 345-46, 102 L. Ed. 2d 688, 109 S. Ct. 633 (1989).

In order to facilitate uniformity and equal taxation of real property, K.S.A. 1995 Supp 79-501 provides that real property is to be valued at its fair market value. The legislature has defined "fair market value" to mean the amount of money that a well-informed buyer is justified in paying and a well-informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. K.S.A. 1995 Supp. 79-503a.

The legislature also set forth a nonexclusive list of factors for consideration in arriving at the fair market value. The legislature

stated that sales in and of themselves shall not be the sole criteria of fair market value but shall be used in connection with cost, income, and other factors including, but not by way of exclusion:

"(a) The proper classification of lands and improvements; (b) the size thereof; (c) the effect of location on value; (d) depreciation, including physical deterioration or functional, economic, or social obsolescence; (e) cost of reproduction of improvements; (f) productivity; (g) earning capacity as indicated by lease price, by capitalization of net income or by absorption or sell-out period; (h) rental or reasonable rental values; (i) sale value on open market with due allowance to abnormal inflationary factors influencing such values; (j) restrictions imposed upon the use of real estate by local governing bodies, including zoning and planning boards or commissions; and (k) comparison with values of other property of known or recognized value." K.S.A. 1995 Supp. 79-503a.

In *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. at 126-27, the Kansas Supreme Court indicated that compliance with K.S.A. 79-503a is a vital factor in the determination of whether a tax assessment is uniform and equal:

"When determining the validity of an assessment of real property for uniformity and equality in the distribution of the burdens of taxation, the essential question is whether the standards prescribed in K.S.A. 79-503a have been considered and applied by the taxing officials. The assessment of real property which takes into consideration only some of the pertinent statutory factors of K.S.A. 79-503a cannot be upheld where evidence indicates there has not been a uniform and equal rate of assessment and taxation in the county."

Cashatt argues that all of the pertinent statutory factors were not followed and, even if they were, the constitutional mandate of uniformity and equality would trump the statutory factors. He cites *In re Rome*, 218 Kan. 198, 203, 542 P.2d 676 (1975), where the court stated that the Kansas Constitution takes precedence over a statute should a conflict arise, and *Gordon v. Hiett*, 214 Kan. 690, 695, 522 P.2d 942 (1974), where the court stated that the constitutional mandate of uniformity takes preference over a legislative directive to assess at a fixed percentage of justifiable value. The County contends the appraiser correctly determined the fair market value of Cashatt's property by carefully evaluating each statutory factor.

One of the factors to be examined in valuing property is restrictions imposed upon the use of real estate by local governing bodies,

including zoning and planning boards or commissions. K.S.A. 1995 Supp. 79-503a(j). There is legislative history in the record concerning the addition of subsection (j) to K.S.A. 79-503a in 1990. The testimony before the Senate Committee on Assessment and Taxation appears to have been a result of the *In the Matter of Kenney*, Doc. No. 89-6903-EQ (March 7, 1990), situation. The homes in the Wanamaker Corridor in Topeka as portrayed in *Kenney* were described by Senator Salisbury in the minutes of a hearing on February 13, 1990, as "modest and are occupied by the elderly on fixed and limited income, and some have been occupied for up to 40 years and most of the residents have no desire to relocate." The minutes continued:

"It may be a number of years before these properties are commercial, and she would like to propose an amendment to amend the law to read residential properties should be appraised as residential property as long as that is the intended use, and the constitution only allows for agricultural property to be appraised at land use. She said, the guidelines issued by the Property Valuation Director would be more appropriate, and *SB555* does not do this, and she does not believe the intent of reappraisal was to drive long term elderly individuals from their homes, and just because they do not have a buyer and are unable to pay taxes of $2,000 to $6,000 a year on a one or two bedroom home they have occupied for many years. These individual homes should be appraised at regular residential use until there is evidence the property is ready to be developed for commercial use."

However, that was not what resulted from the legislative process. Instead, K.S.A. 1995 Supp. 79-503a(j) provides only that one of the factors in determining fair market value is "restrictions imposed upon the use of real estate by local governing bodies, including zoning and planning boards or commissions."

The Kansas Legislature did not amend the constitution or provide a statutory provision to allow taxation of a residence at residential values until it is no longer used as a residence. The legislature made a conscious decision in light of other states' valuation statutes. In Arkansas, for example, Ark. Code Ann. § 26-26-407(a) (1987) provides that residential property used solely as the principal place of residence of the owner shall be valued as a residence until the property ceases to be used for residential purposes. See *Gazaway v. Greene County Equalization Bd.*, 314 Ark. 569, 864

S.W. 2d 233 (1993). Kansas simply does not have a parallel statu-
tory provision.

Cashatt argues that *Greenhaw*, 241 Kan. 119, 734 P.2d 1125
(1987), cited by BOTA, supports his position. In *Greenhaw*, the
court considered vacant land in Johnson County which had been
leased to a developer on a long-term lease with an option to pur-
chase. The county contended it should be valued as development
land. Greenhaw contended the property should be valued as bare
agricultural land. At the time of the valuation, no actual physical
development had taken place on the land. When the property was
compared to 28 other tracts in the county, the taxpayer's property
was valued between 11 to 16 times higher than the other tracts.
The *Greenhaw* court determined that the land should be valued
as agricultural land. The court stated:

> "Uniformity in taxation implies equality in the burden of taxation, and this
> equality cannot exist without uniformity in the basis of valuation. Uniformity in
> taxation does not permit a systematic, arbitrary, or intentional higher valuation
> than that placed on other similar property within the same taxing district. Under
> the facts of this case, the assessment of Greenhaw's land was so arbitrary and
> grossly discriminatory that it destroyed uniformity and equality in the manner of
> fixing the assessed valuation and was illegal. BOTA and the district court were
> correct in determining that the long-term lease of Greenhaw's land should be
> treated like a sale and the valuation for assessment should be the same as that for
> comparable undeveloped neighboring tracts." 241 Kan. at 127.

The district court in the case at bar distinguished *Greenhaw*
from Cashatt's situation since *Greenhaw* involved an appraisal
based on a long-term lease and was not dependent on development
of surrounding properties. The court stated the *Greenhaw* facts
were not present here. Similarly, the County argues *Greenhaw* did
not turn on the use to which the land was placed, but rather on a
policy in the appraiser's office which resulted in truly like prop-
erties being valued differently. We agree.

The County disagreed with BOTA's finding that it opposed a
decision that had the practical consequences of employing the tax-
ation system to force homeowners from their homes. First, the
County states there is no indication that such a scenario existed
here. Second, the County cites *State ex rel. Stephan v. Martin*, 227

Kan. 456, 468, 608 P.2d 880 (1980), where the court stated that ad valorem taxes are to be imposed based on the value of the property, not on the owner's ability to pay. Since BOTA's decision is not based on fair market value, the County argues it is unreasonable, arbitrary, and capricious since it is contrary to Kansas statutory and constitutional law.

The County has a strong argument in that the appraiser apparently took into account all the relevant factors in K.S.A. 1995 Supp. 79-503a for determining fair market value of the property. Cashatt's argument hinges on the fact that the property is still being used as a residence. The appraiser took this factor (K.S.A. 1995 Supp. 79-503a[j]) into account in valuing the property.

In the instant case, the fair market value of the residential property involved was determined through appropriate, statutorily mandated procedures by the county appraiser. Valuing residential land at its fair market value may well lead to some residential land being valued at a higher per-square-foot value than other residential land due to its suitability for commercial use. This does not constitute unequal or nonuniform taxation under our laws.

In Kansas, ad valorem taxes are to be imposed based on the value of the property, not on the owner's ability to pay. Fair market value, not the present use of nonagricultural property, is the appropriate means for tax valuation in Kansas.

On appeal, BOTA ruled the assessment to be in error because it found: (1) particular errors in the way the county computed costs to prepare the land for commercial use; (2) using fair market value would result in severe inequality among other similar homes; (3) the possibility existed that the assessment was so high that the taxpayers might be forced to sell their homestead; and (4) the property should be appraised at its highest and best possible use, as a residential home.

BOTA's reasons 2, 3, and 4, cited above, are contrary to Kansas law and are, therefore, clearly erroneous. BOTA's first reason for finding error by the County is plausible on its face and should be accorded deference. With the record before us, it is impossible to separate the valid reasons from the invalid reasons cited by BOTA

and arrive at an appropriate value without an independent weighing of the facts by the court.

This matter must be remanded to BOTA for further proceedings consistent with this opinion.

Cashatt finally argues the County's valuation amounted to an unconstitutional taking of property without just compensation. Cashatt supports this argument on the theory that the United States Supreme Court has recently given a broader meaning to property rights under the Fifth Amendment, which provides that no private property shall be taken for public use without just compensation.

In this case, there is simply not a taking of any property that will be available for public use. Cashatt argues the County's valuation of his property causes him to pay much higher taxes and is therefore a "taking." This is incorrect because this is not a taking of property for public use under the Fifth Amendment to the United States Constitution.

The decision of the district court is affirmed in part and reversed in part, and the matter is remanded to BOTA for further proceedings consistent with this decision.

Affirmed in part, reversed in part, and remanded.