(944 P.2d 172)
No. 76,553

League of Kansas Municipalities, *Appellee*, v. Board of County Commissioners of Shawnee County, Kansas, *Appellant*.

Opinion filed August 29, 1997.

*Sandra L. Jacquot*, county counselor, and *Susana L. Valdovinos*, assistant county counselor, for appellant.

*John M. Knox*, of Riling, Burkhead & Nitcher, Chartered, of Lawrence, for appellee.

Before PIERRON, P.J., PADDOCK, S.J., and DAVID PRAGER, Chief Justice Retired, assigned.

PADDOCK, J.: This appeal is to determine if the district court erred in ordering that the League of Kansas Municipalities (League) was exempt from ad valorem taxation. The Board of Tax Appeals (BOTA) had denied the League's application for exemption. The League then applied for judicial review, and the district court reversed BOTA's decision and remanded with directions that BOTA grant the exemption. BOTA refused to comply with the court's remand order, and, upon the League's motion, the district court granted the exemption. The Board of County Commissioners of Shawnee County (Board) appeals the court's order reversing BOTA and its order granting the exemption.

### The BOTA decision

BOTA effectively found that the actual use of the League's property was exclusively for municipal purposes.

BOTA acknowledged in its final order that the League, which was created in 1910 and consists of 543 of the 627 cities in Kansas, performs numerous functions on behalf of the cities of Kansas,

including: providing educational and training seminars; performing legal research; providing technical and advisory assistance; monitoring legislation; lobbying governmental functions; and issuing various publications, newsletters, and monthly magazines. BOTA further noted that the League produced various witnesses who testified "that the League was an integral part of their respective cities' operation" and that "the League provides surveys and studies to many cities which could not afford to have such studies compiled themselves." BOTA also noted that the League was exempt from federal income tax as a political subdivision and that pursuant to K.S.A. 12-1610e, it was an "instrumentality" of its member cities. Notwithstanding its findings, BOTA denied the exemption on the basis of its interpretation of K.S.A. 1996 Supp. 79-201a *Second*. It opined that the League did not meet the requirements for the statutory exemption because the League is an instrumentality of its member cities, not a political subdivision, and that even if it is a political subdivision, it does not have the power to levy taxes or issue bonds; thus, the League's property is not being "used exclusively" by a government entity.

K.S.A. 1996 Supp. 79-201a *Second* provides for ad valorem tax exemption, in pertinent part, for

"[a]ll property used exclusively by the state or any municipality or political subdivision of the state. All property owned, being acquired pursuant to a lease-purchase agreement or operated by the state or any municipality or political subdivision of the state, including property which is vacant or lying dormant, which is used or is to be used for any governmental or proprietary function and for which bonds may be issued or taxes levied to finance the same, shall be considered to be 'used exclusively' by the state, municipality or political subdivision for the purposes of this section."

The district court largely adopted BOTA's findings of fact with respect to the League's activities and stated that "[t]he undisputed evidence presented at the administrative hearing demonstrated that all property owned by the League is being used for municipal purposes." The court reversed BOTA's decision holding that BOTA had misinterpreted the provisions of 79-201a *Second*, and stated in part: "The statute does not provide that the ability to issue

bonds or levy taxes is a requirement for exclusive governmental use."

In addition, the court found that BOTA's interpretation of 79-201a *Second* was contrary to the provisions of article 11, § 1(b) of the Kansas Constitution, which provides:

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, farm machinery and equipment, merchants' and manufacturers' inventories, other than public utility inventories included in subclass (3) of class 2, livestock, and all household goods and personal effects not used for the production of income, shall be exempted from property taxation."

### The scope of review

" 'The scope of appellate review of an agency's action is to determine if the district court reviewed the action in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* The party asserting the invalidity of the action has the burden of proving the invalidity. [Citation omitted.]' " *Board of Douglas County Comm'rs v. Cashatt*, 23 Kan. App. 2d 532, 538, 933 P.2d 167 (1997) (quoting *Kaufman v. Kansas Dept. of SRS*, 248 Kan. 951, 959, 811 P.2d 876 [1991]).

The district court's scope of review is set out in K.S.A. 77-621(c), in relevant part: "The district court shall grant relief only if it determines any one or more of the following: . . . (4) the agency has erroneously interpreted or applied the law." Additionally, special rules applicable to the review of agency actions must be considered where the issue is one of statutory interpretation.

Ordinarily, deference should be given to an administrative agency's interpretation of a statute, especially if the agency is one of special competence and experience and if the statute is one which the agency is charged with enforcing. *Board of Douglas County Comm'rs*, 23 Kan. App. 2d at 538. However, an agency's determination is not conclusive, and the question of whether an agency has erroneously interpreted a statute as a matter of law is a question over which this court has unlimited review. 23 Kan. App. 2d at 538-39.

"The legal principles applicable to questions of taxation and exemption are well settled. Whether particular property is exempt from ad valorem taxation is a question of law if the facts are agreed upon. [Citation omitted.] Taxation is the rule,

and exemption from taxation is the exception under the Kansas Constitution and statutes. [Citation omitted.] Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one claiming exception, and all doubts are to be resolved against the exemption. [Citation omitted.] Strict construction, however, does not mean unreasonable construction." *Lario Enterprises, Inc. v. State Bd. of Tax Appeals,* 22 Kan. App. 2d 857, 859, 925 P.2d 440, *rev. denied* 261 Kan. 1085 (1996).

Generally, it is presumed that the legislature intends that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results. *Todd v. Kelly,* 251 Kan. 512, 520, 837 P.2d 381 (1992). Further, "[w]hen a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny,* 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992).

### K.S.A. 1996 Supp. 79-201a Second *issues*

### 1. The ability to issue bonds or levy taxes issue

The Board does not actually brief or argue that the district court erred in ruling that BOTA incorrectly interpreted the phrase "used exclusively" to require that the entity seeking an exemption also be able to levy taxes or issue bonds.

We ordinarily consider issues on appeal that are not briefed to be abandoned. *Pope v. Ransdell,* 251 Kan. 112, 119, 833 P.2d 965 (1992). However, because BOTA and the district court primarily relied upon this question in reaching their respective decisions, we will resolve the issue.

K.S.A. 1996 Supp. 79-201a *Second* sets out a three-part test which may be used to determine when property is "used exclusively": (1) if the property is "owned, being acquired pursuant to a lease-purchase agreement or operated by the state or any municipality or political subdivision of the state"; (2) if the property is "used or is to be used for any governmental or proprietary function"; and (3) if it is property "for which bonds may be issued or taxes levied to finance the same." See *Lario Enterprises, Inc.,* 22 Kan. App. 2d at 860-61.

Under the statute, the fact that property is, or may be, financed through the use of public funds is an indication that the property

is being "used exclusively" for governmental purposes. However, the wording in the statute does not support a conclusion that the applicant seeking the exemption must actually be the one authorized to provide such financing by issuing bonds or levying taxes. Therefore, the district court was correct in finding that BOTA erroneously interpreted the language of 79-201a *Second* in denying the League's application for exemption on the ground it could not issue bonds or levy taxes.

### 2. The "instrumentality" issue

The second reason that BOTA denied the League's application for exemption was that the League was an instrumentality of its member cities and was not a municipality or a political subdivision as required by the statute. The Board also uses this argument on appeal.

The League is defined as an instrumentality of its member cities. K.S.A. 12-1610e. K.S.A. 12-1610g states:

"The member cities of the league of Kansas municipalities acting by and through such instrumentality and in its name shall have power to purchase, or to receive by gift, devise or bequest, and to hold real and personal property; to sell and convey any such real or personal property; to make contracts; to have and use a seal for such instrumentality; to sue and be sued in the name of such instrumentality in relation to its property and affairs; and to do all other acts necessary to the exercise of the functions of such instrumentality: *Provided*, That the payments of the current annual membership dues and subscriptions shall be the limit of liability of any member city for the acts and obligations of said instrumentality: *Provided further*, That in the event the league of Kansas municipalities is dissolved or otherwise terminated all of its files, records, assets and property whatsoever, shall be delivered to the secretary of state to be held in custody for the cities of this state."

Although there is no argument but that the League's property is *actually* being used for municipal purposes, it is not owned or operated by a municipality. Rather, as K.S.A. 12-1610g states, the League's property is owned by an "instrumentality" of its member cities. The term "instrumentality" is commonly understood to mean the quality or state of being instrumental, that is, serving as a means, agent, or tool. Webster's Collegiate Dictionary 607 (10th ed. 1994). It is close to, but not, as the League claims, being one

and the same as the municipalities it serves. The evidence produced at trial supports the fact that the League's primary role is that of an agent of its member cities, acting on behalf of and by the authority of its members.

The district court resolved this issue in favor of the League on the basis that the League is the alter ego of the cities and is, therefore, entitled to an exemption under the statute and the constitution.

We do not see the solution of this issue to be one of alter ego, which is a concept predominantly encountered in the law of corporations and to a lesser extent in contractual and tort law. It is usually a concept that is used to pierce the corporate veil when a corporation is using its status as a means of injustice to some third person. *Dean Operations, Inc. v. One Seventy Assocs.*, 257 Kan. 676, 680-84, 896 P.2d 1012 (1995). Rather, we believe the real issue in this case is whether in light of the broad language of article 11, § 1(b) of the Kansas Constitution, the League's existence as an entity separate from its member cities should be disregarded for purposes of 79-201a *Second*. In other words, can the statute be construed consistent with the constitutional provision where, as here, the property of an instrumentality, an agent of its member cities, is actually being used for municipal purposes? We hold that it can.

Article 11, § 1(b) states in relevant part, that "[a]ll property used exclusively for municipal . . . purposes . . . shall be exempted from property taxation."

In *Board of Leavenworth County Comm'rs v. McGraw Fertilizer Serv., Inc.*, 261 Kan. 901, 905, 933 P.2d 698 (1997), the court stated:

"In ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers (the legislature) and the adopters (the voters) of that provision. [Citation omitted.] A constitutional provision is not to be narrowly or technically construed, but its language should be interpreted to mean what the words imply to persons of common understanding. [Citations omitted.] Words in common usage are to be given their natural and ordinary meaning in arriving at a proper construction."

In *Salina Airport Authority v. Board of Tax Appeals*, 13 Kan. App. 2d 80, 82, 761 P.2d 1261, *rev. denied* 244 Kan. 738 (1988),

this court considered the question of whether property owned by the Salina Airport Authority and leased to private companies was exempt under 79-201a *Second*. We held, under the facts of that case, that the mere fact that the Authority received rental income did not constitute "use" within the meaning of the statute. 13 Kan. App. 2d at 84.

In reviewing the applicable principles of law, we stated, in part:

"Under Kan. Const. art. 11, § 1, all property used exclusively for governmental purposes is exempt from taxation. This exemption depends solely upon the exclusive use made of the property and not on the ownership or the character of the owner. *Topeka Cemetery Ass'n v. Schnellbacher*, 218 Kan. 39, 42, 542 P.2d 278 (1975). The legislature may exempt from taxation property other than that named in the constitution, provided, however, the exemption has a public purpose and is designed to promote the public welfare. [Citation omitted.] The statutory exemptions may be broader than the constitutional ones. [Citation omitted.]

"In *T-Bone Feeders, Inc. v. Martin*, 236 Kan. 641, 645-46, 693 P.2d 1187 (1985), controlling principles in analyzing a claim of exemption were stated to be:

. . . .

'(4) The question is not whether or not the property is used partly or even largely for the purpose stated in the exemption provisions, but whether it is used exclusively for those purposes. [Citations omitted.]

'(5) The phrase "used exclusively" in the constitution and statutes means that the use made of the property sought to be exempted from taxation must be only, solely, and purely for the purposes stated, and without participation in any other use. [Citation omitted.]' " 13 Kan. App. 2d at 83.

In *Lario*, the City of Topeka sought an exemption under 79-201a *Second* for property known as Heartland Park Topeka, a race track and motor sports facility. The property had been transferred to the city for a term of years, at the end of which it reverted back to the transferor. BOTA granted the exemption, finding that the property was owned by the city and that it was used exclusively by the city for a public purpose. The district court affirmed. However, U.S.D. 450 appealed, claiming that the city had acquired only a limited ownership interest in the property which was insufficient for the purposes of obtaining an exemption under the statute. This court noted that 79-201a *Second* sets forth a slightly different exemption as that stated in article 11, § 1(b) of the Kansas Consti-

tution and recognized that 79-201a *Second* sets out a three-part test which *may* be used to determine whether property is being "used exclusively" under the statute. 22 Kan. App. 2d at 860-61.

Under the facts of that case, this court determined that the property in question was both owned and operated for the purposes of the statute but, in doing so, indicated that the primary consideration in such a case is not necessarily ownership and its qualifications, but *how* the property is being used in the hands of its owner. 22 Kan. App. 2d at 861-65. Quoting *In re Tax Exemption Application of City of Wichita*, 255 Kan. 838, 847, 877 P.2d 437 (1994), this court stated: " 'The determination of tax exemption under the statute depends to a large extent upon the status of the property in the hands of the owner and whether it actually is being used for a public purpose.' " *Lario*, 22 Kan. App. 2d at 865. See *City of Liberal v. Seward County*, 247 Kan. 609, 618, 802 P.2d 568 (1990); *Tri-County Public Airport Auth. v. Board of Morris County Comm'rs*, 245 Kan. 301, 309-10, 777 P.2d 843 (1989); *Salina Airport Authority*, 13 Kan. App. 2d at 83.

On appeal, the Board claims that had the legislature intended to exempt property belonging to instrumentalities of government entities, it would have so stated. However, the Board neglects to address the fact that such an interpretation is inconsistent with the clear language of article 11, § 1(b), which exempts *all* property being used exclusively for governmental purposes, not just property owned by the State or any municipality or political subdivision thereof.

We construe K.S.A. 1996 Supp. 79-201a *Second* to be consistent with the language of article 11, § 1(b) of the Kansas Constitution and to include property which is owned by an instrumentality of a government entity or entities as long as such property is being used exclusively for governmental purposes. Because the League's property in this case was being used exclusively for municipal purposes, the League was entitled to have its application for exemption from property taxes approved.

### The exclusive use issue

The Board, although not denying the actual use of the League's property is for municipal purposes, makes a technical argument in maintaining that the property is not being used exclusively for municipal purposes.

First, the Board claims that the League's activities are neither an essential nor integral function of the cities it serves. It cites three cases in support of this argument. One of the cases cited is an unpublished opinion of this court which does not meet any of the listed exceptions to Supreme Court Rule 7.04 (1996 Kan. Ct. R. Annot. 41). Rule 7.04 prohibits citing as precedent unpublished opinions of the appellate courts. We will not consider that case in this appeal.

In *Kansas State Teachers Ass'n v. Cushman*, 186 Kan. 489, 351 P.2d 19 (1960), cited by the Board, the use of the property benefitted the individual member-teachers of the association, and not the institution of education itself, and was, therefore, not used exclusively for educational purposes. 186 Kan. at 501. Thus, *Cushman* may be distinguished from the instant case because the property in this case benefits not the individuals in city government, but the city government itself.

The Board also cites *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, 473 P.2d 1 (1970), to support its argument. In *Cogswell*, the court determined that an administrative building used by the United Methodist Church was exempt from ad valorem property tax under K.S.A. 79-201 *Third* (Weeks 1969) and article 11, § 1 of the Kansas Constitution because the property was being used exclusively for religious purposes. The court stated: "The administrative offices of such institutions, although perhaps a step removed from the performance of the ultimate beneficial act, are no less an integral, essential and absolutely necessary part of the act itself." 205 Kan. at 859.

However, the court noted that the only real question in a case involving whether property is being used exclusively for a particular purpose under the constitution, is whether such property is actually being used for that purpose and for no other purpose, in whole or

in part. 205 Kan. at 859, 861. More importantly, the court held that the use of the words "directly" and "immediately" in prior decisions such as *Cushman* to describe the extent to which property was being used for a particular purpose did not operate as an added condition of exclusive use, but was merely "explanatory or descriptive of the facts rather than controlling in the decision-making process." 205 Kan. at 858. The court stated:

"[T]heir use must be considered in the light of the facts in the particular case in which they appear. To interpret 'exclusively' to mean only that which is also 'directly' and 'immediately' used for a tax exempt purpose is unrealistic and would in substance add a new dimension to Article 11, Section 1 of the Kansas constitution limiting the tax exemption guaranteed by the constitution." 205 Kan. at 858.

Therefore, contrary to the Board's assertions, the use of the words "integral," "essential," and "absolutely necessary" by the *Cogswell* court were a means to describe the administrative function of the church rather than an additional requirement of exclusive use under the constitution. The Board's argument in this regard is without merit.

Next, in support of its nonexclusive use claim, the Board argues that the League's activities serve only a limited number of its members. In support of this argument, it refers to the Kansas Municipal Insurance Trust, which the League and 50 of its member cities created through group pooling to provide insurance protection for cities against workers compensation claims.

The Board argues that because only 50 of the League's member cities currently participate in the trust, the trust is not being used for municipal purposes. Implicit in the Board's argument is the assumption that the trust is not available to the rest of the League's membership. Not only is there no evidence to support such a claim, but even if it were true, it is clear that, because the trust operates solely for the benefit of the municipalities who do participate, it is obviously being used for a municipal purpose: to protect the cities themselves from workers compensation liability. Consequently, the Board's assertion that the League's operation of the Kansas Municipal Insurance Trust precludes a finding that the League's prop-

erty is being "used exclusively" for public purposes is without merit.

### The court's order granting the exemption

After BOTA refused to follow the court's remand order and upon the League's motion, the court granted the requested exemption. The judge held that he had jurisdiction to grant the exemption pursuant to K.S.A. 77-622(b), which states:

"The court may grant *other appropriate relief*, whether mandatory, injunctive or declaratory; preliminary or final; temporary or permanent; equitable or legal. In granting relief, the court may order agency action required by law, order agency exercise of discretion required by law, set aside or modify agency action, enjoin or stay the effectiveness of agency action, remand the matter for further proceedings, render a declaratory judgment *or take any other action that is authorized and appropriate*." (Emphasis added.)

The Board does not challenge the court's jurisdiction, but instead argues the court improperly exercised its jurisdiction over a tax issue that should have been left to BOTA to decide. Specifically, the Board argues that the judge inappropriately made findings of fact which should have been left to BOTA's specialized area of expertise.

The Board's argument is without merit for two reasons. Contrary to the Board's argument, not only was the primary issue presented to the court a matter of statutory interpretation which is a matter of law rather than fact, but also the court made no findings of fact that were inconsistent with those made by BOTA. BOTA's order sufficiently determined that the League's property was actually being used for municipal purposes, although it denied the League's application on other grounds.

Furthermore, in light of the fact that BOTA expressly refused to follow the district court's direction on remand, the court did not err in granting, pursuant to K.S.A. 77-622(b), the relief requested by the League.

Affirmed.