(71 P.3d 1167)
No. 89,592

KAREN J. KRUEGER, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF WOODSON COUNTY, KANSAS, and COUNTY APPRAISER OF WOODSON COUNTY, KANSAS, *Appellees*.

Opinion filed June 27, 2003.

*Karen J. Krueger*, pro se appellant.

*Jerry B. Hathaway*, of Iola, and *Leo T. Gensweider*, county attorney, for the appellees.

Before RULON, C.J., LEWIS, J., and LARSON, S.J.

LEWIS, J.: Karen J. Krueger (taxpayer) purchased a 100-year-old house in Yates Center from her father and brother for $1,500. At the time of the purchase in 1991, the house had not been lived in for many years and was uninhabitable. It had a depreciation rating of "very poor" and had been appraised at $4,280 by the Woodson County Appraiser (County). The taxpayer immediately commenced a restoration project on the house. She testified she restored certain parts of the house as she acquired the money necessary to do so. She first demolished an enclosed porch on the northwest corner of the house because the termite inspector suspected there might be a well under it.

In 1992, the taxpayer poured a foundation for a new room on the northwest corner of the house and for a porch and carport to be added on the west side of the house. The County, which had lowered the appraised value to $2,500 in 1992, added $500 for the new foundation, and the house was appraised for $3,000 in 1993.

In 1993, the taxpayer continued her renovation, removing plaster from the interior walls and storing fixtures in the garage. In 1994, the taxpayer repaired the front porch and a room on the southwest corner of the house which had been damaged by termites.

In 1998, significant renovations and improvements to the house began. The taxpayer framed, roofed, and sided the additions and replaced the siding, shingles, and windows on the main house. She also removed a roof on the west side of the house and replaced it with a gable. The inside of the house was still bare studs. Extensive renovation continued through 1999, 2000, and 2001.

The problems between the taxpayer and the County began in 1999, when the County increased the appraised value of the property from $3,000 to $28,810. The county appraiser used the cost approach method, rather than the market approach, to determine the valuation of the house. The cost approach method calculates the value of the house by multiplying the total number of square feet of the house times the per square foot cost of new construction. The cost of construction is determined annually based upon figures the county appraiser receives from contractors, builders, and lumberyards in the county. After the appraiser compiled the total cost of construction, the total was adjusted for various items. The adjusted amount is put through a formula and the result is the valuation of the house for taxation purposes.

The taxpayer began to protest the increase in taxes, insisting that the inside of the house was gutted and uninhabitable. She also challenged the calculation which showed that the house was 55 percent complete. In a May 2000 decision, the County lowered the value of the property to $25,210, based on a correction in the amount of living area and the year built.

The taxpayer appealed the County's valuation to the Small Claims Division of the Board of Tax Appeals (BOTA). After a hear-

ing in August 2000, the small claims hearing officer lowered the valuation on the property to $17,900. The County appealed that decision to BOTA. The taxpayer did not file a cross-appeal.

In 2001, the valuation on the property was increased to $19,400. Although the taxpayer had added central heat and air conditioning, the house still lacked insulation, interior walls, and running water. The taxpayer had an informal meeting with the County, and the county appraiser reduced the valuation by $77, to $19,303. The taxpayer appealed to BOTA's Small Claims Division. After a hearing, the small claims hearing officer determined that valuation for 2001 was $19,303 and upheld the cost approach method in determining the valuation. The taxpayer appealed to BOTA. The County did not file a cross-appeal.

At that point, there were three appeals pending to BOTA. BOTA heard the appeals concerning tax years 1999, 2000, and 2001 in August 2001. After that hearing, BOTA adopted the County's suggested valuations of $25,210 for 1999; $25,210 for 2000; and $26,710 for 2001.

BOTA's decision was appealed to the district court, which affirmed it, and the matter has now reached our court.

Perhaps the most troubling issue on appeal is the method used to determine the value of the house. This question was litigated, and BOTA concluded the County was justified in using the cost approach method. However, BOTA did acknowledge that the County used a different method of valuation for the taxpayer's property than it did for other properties, including those which are being or had been remodeled, but found that the taxpayer's property was in a "unique circumstance." Indeed, it was revealed that the taxpayer's home was the only home in Yates Center that was valued by this method.

The trial court discussed this issue and recognized that the same method had not been used to valuate the taxpayer's property as was used with other properties in Yates Center. However, the trial court held that BOTA had decided the house in this case was "unique" and that the taxpayer had failed to sustain her burden of proof to show that it was "not unique."

## UNIFORM AND EQUAL BASES FOR VALUATION

The first and perhaps seminal issue on appeal is whether the County erred when it used one method to value the taxpayer's home and a different method to value all other homes in Yates Center.

Our standard of review under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions is set forth at K.S.A. 77-601 *et seq.*, and is well known. If we determine that BOTA has erroneously interpreted or applied the law or if BOTA's action is otherwise unreasonable, arbitrary, or capricious, we may reverse its decisions. BOTA acts arbitrarily or capriciously when its actions are overtly and patently in violation of the law or are unreasonable and without foundation in fact. *Board of Douglas County Comm'rs v. Cashatt*, 23 Kan. App. 2d 532, 933 P.2d 167 (1997). The party challenging the validity of BOTA's action bears the burden of proving the invalidity. *Hixon v. Lario Enterprises, Inc.*, 257 Kan. 377, 379, 892 P.2d 507 (1995).

"BOTA is a specialized agency that exists to decide taxation issues, and its decisions are given great weight and deference when it is acting in its area of expertise. However, if BOTA's interpretation is erroneous as a matter of law, appellate courts will take corrective steps." *In re Appeal of Intercard, Inc.*, 270 Kan. 346, 349, 14 P.3d 1111 (2000). Interpretation of a statute is a question of law, and the appellate court's review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

The right to equal treatment in matters of taxation is a protected right under both the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the uniform and equal rate of assessment and taxation provision found in Article 11, § 1 of the Kansas Constitution. *Colorado Interstate Gas Co. v. Beshears*, 271 Kan. 596, 609, 24 P.3d 113 (2001).

" 'When determining the validity of an assessment of real property for uniformity and equality in the distribution of the burdens of taxation, the essential question is whether the standards prescribed in K.S.A. 79-503a have been considered and applied by the taxing officials.' " *Marriott Corp. v. Board of Johnson County*

*Comm'rs*, 25 Kan. App. 2d 840, 845, 972 P.2d 793 (1999) (quoting *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 126, 734 P.2d 1125 [1987]).

K.S.A. 79-1439(a) provides: "All real and tangible personal property which is subject to general ad valorem taxation shall be appraised uniformly and equally as to class and, unless otherwise specified herein, shall be appraised at its fair market value, as defined in K.S.A. 79-503a, and amendments thereto."

Fair market value is defined by K.S.A. 79-503a:

" 'Fair market value' means the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. For the purposes of this definition it will be assumed that consummation of a sale occurs as of January 1."

The taxpayer's primary complaint is that the County did not appraise her real estate using a similar or identical method as used on other properties in the county. This fact appears to be undisputed by the County. The County says it used a "different method" because the taxpayer's property was "in a unique circumstance." The question we must determine is whether the statutory provision and the constitutional provision requiring a uniform and equal manner of taxation should be broadly and liberally applied to all properties or whether those terms apply simply to comparable properties. In other words, if in fact the taxpayer had a "unique property," then it would appear that because of its uniqueness, it is not like the balance of other property in Yates Center and might be valued in a different manner than those houses which were not unique.

We acknowledge that Kansas law requires that property be valued in a uniform and equal manner. As we have stated, it appears on the surface that this has not been done in the instant matter. However, neither the statute nor the constitution requires that the manner used be identical. "This is not to say that each parcel in a given tract must be valued using the same method of valuation. However, the method of valuation should be tied to factors associated with each parcel of property, not the status of the owner of the property." *Hixon*, 257 Kan. at 383.

In this case, BOTA stated:

"The Board finds that the subject property is to be uniformly and equally valued at its fair market value. This requirement does not require that the valuation method be the same for every building. Different buildings have different uses and different histories that require that various methods of valuation be used. In this case, the subject property is an older property that has been extensively renovated to the point that much of it is a new house. The Board finds that in this case the cost approach to value is appropriate. Because of the renovation little depreciation has occurred on much of the renovated items, thus making the cost approach credible. It is true, however, that such basic items as the foundation and skeleton of the home are over a century old, but the evidence does not show that mere age of these items should detract from the subject property's value. Woodson County has few sales, and even fewer sales of properties comparable to the subject property. Because of this, the County is justified in not using the comparable sales approach to value."

The County went to considerable efforts to show that the taxpayer's property was unique.

K.S.A. 79-503a is certainly pertinent to our valuation, and it states as follows:

"Sales in and of themselves shall not be the sole criteria of fair market value but shall be used in connection with cost, income and other factors including but not by way of exclusion:

(a) The proper classification of lands and improvements;

(b) the size thereof;

(c) the effect of location on value;

(d) depreciation, including physical deterioration or functional, economic or social obsolescence;

(e) cost of reproduction of improvements;

(f) productivity;

(g) earning capacity as indicated by lease price, by capitalization of net income or by absorption or sell-out period;

(h) rental or reasonable rental values;

(i) sale value on open market with due allowance to abnormal inflationary factors influencing such values;

(j) restrictions imposed upon the use of real estate by local governing bodies, including zoning and planning boards or commissions; and

(k) comparison with values of other property of known or recognized value. The assessment-sales ratio study shall not be used as an appraisal for appraisal purposes.

"The appraisal process utilized in the valuation of all real and tangible personal property for ad valorem tax purposes shall conform to generally accepted appraisal

procedures which are adaptable to mass appraisal and consistent with the definition of fair market value unless otherwise specified by law."

If the question is one of fact and if our standard of review is one of substantial competent evidence, then our standard of review requires that we affirm this decision even though we might question the wisdom of it. We find that to be the proper analysis in this action.

The County followed the statute quoted above in determining the value of the property by using the cost method calculation. However, since the property was in the County's judgment "in unique circumstance," the County adjusted the method to better determine the fair market value of the house. If the house was incomplete, it was appraised as if it were complete and then the value was decreased to account for the fact that it was only a little over 50 percent complete. The method used by the County was in accordance with fair market value and considered many of the factors outlined in K.S.A. 79-503a. The taxpayer's problem is that she failed to meet her burden of proof to show there were other properties in a similar situation to her property which had been appraised by a different method. As we said earlier in this opinion, the burden of proof was on the taxpayer, and she did not sustain that burden insofar as showing that her property was not "in a unique circumstance."

Our standard of review requires us to conclude that the burden of proof was on the taxpayer, the taxpayer did not sustain her burden of proof, and for that reason BOTA's order must be affirmed.

Since we affirm BOTA's decision, the last issue raised by the taxpayer is moot, and we do not reach that issue.

Affirmed.