NOT DESIGNATED FOR PUBLICATION

No. 115,398

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Equalization Appeal of
HENDRICKS, RANDALL E./LISA CREIGHTON HENDRICKS
for the Year 2015 in Johnson County, Kansas.

MEMORANDUM OPINION

Appeal from Board of Tax Appeals. Opinion filed April 14, 2017. Affirmed.

*Randall E. Hendricks* and *Lisa C. Hendricks*, appellants pro se.

*Kathryn D. Myers*, assistant county counselor, for appellee Board of Johnson County Commissioners.

Before HILL, P.J., MALONE and GARDNER, JJ.

*Per Curiam*:  The Johnson County appraiser (the County) valued Randall and Lisa Hendricks' home at $2,389,500 for the 2015 tax year. The Hendricks disputed the County's appraisal, but the small claims hearing officer and the Board of Tax Appeals (BOTA) agreed with the County's valuation. The Hendricks now appeal BOTA's summary decision upholding the County's valuation and argue that (1) BOTA erred in finding the County's valuation accurate because it was not supported by the evidence; (2) the County violated K.S.A. 2015 Supp. 79-503a by failing to consider similar properties; and (3) the County violated the Kansas Constitution's requirement of a uniform rate of assessment and taxation. For the reasons stated herein, we affirm BOTA's decision.

1

The Hendricks' property is located in Mission Hills, Kansas, 2 blocks from the Mission Hills golf course. The brick colonial house was built in 2004 and has 4,647 square feet of living area. The house has five bedrooms, four and a half baths, and a partially finished basement. In 2015, the County issued a notice of assessment valuing the Hendricks' home at $2,389,500. This was an increase from the 2014 tax year where the County valued the property at $2,100,000.

The Hendricks disputed the County's valuation and filed a claim with the small claims hearing division. The hearing officer noted that the County based its valuation on the sales of three comparable properties, two of which were located in the same subdivision as the Hendricks' property. However, the Hendricks argued that the valuation should be based on the sales of four other comparable homes. The hearing officer rejected the comparable homes proposed by the Hendricks, finding they were significantly older properties and the Hendricks had failed to provide evidence of when the properties sold.

The hearing officer also rejected the Hendricks' proposed valuation based on the property's price per square foot because "[p]er square foot comparisons do not account for other factors. Particularly in Mission Hills where value is placed on other factors than mere size of the above-grade living area." Instead, the hearing officer explained that land size and location, amenities such as finished basements, and age of the home should be considered. The hearing officer ultimately upheld the County's valuation of $2,389,500, explaining that the comparable homes provided by the Hendricks were "not as comparable to the subject property as the County's comparable sales."

The Hendricks appealed the hearing officer's decision to BOTA. The Hendricks argued that the County's assessed value was unsupported by comparable sales.

Specifically, the Hendricks pointed to the fact that the average price per square foot of the comparable sales used by the County was $441, but the average price per square foot of the Hendricks' proposed comparable sales was $351—and those sales were closer in time and closer in location to the subject property. The Hendricks also claimed that the County violated K.S.A. 2015 Supp. 79-503a because the value it placed on the Hendricks' home was 130 percent greater per square foot than the house next door, which sold in 2015. Finally, the Hendricks argued that there was a "[l]ack of appraisal uniformity" because their property valuation increased by a greater percentage than other adjacent properties.

At a hearing before BOTA on February 1, 2016, Tracy Weaver testified for the County and explained that the County used a sales comparison approach to value the Hendricks' property. She also explained that when valuing the subject property, the County took into account other factors such as the property's age, size, improvements, and its highly desirable location near the Mission Hills golf course. The Hendricks in turn asserted that the County's comparable properties were not comparable enough and urged BOTA to accept their suggested comparable properties. The Hendricks claimed that their proposed properties were closer in location to the subject property and were sold more recently. The Hendricks again stressed that the County's valuation resulted in a higher price per square footage than other comparable properties.

BOTA issued its summary decision on February 11, 2016. BOTA found that "[t]he County appraised the subject property utilizing its sales approach, which examined recent sales in the area and performed appraisal adjustments based on the differences between these comparables and the subject property." Thus, BOTA upheld the County's valuation because "[b]ased on the substantial credible market evidence presented at the hearing . . . the County's appraisal is the best indicator of value presented." BOTA's summary decision explicitly notified the Hendricks that they could appeal the decision directly to the Kansas Court of Appeals without filing a petition for reconsideration or a request for

3

a full and complete opinion. On March 11, 2016, the Hendricks filed a petition for review with this court asking that it overturn BOTA's decision.

SUBJECT MATTER JURISDICTION

Prior to addressing the merits of the Hendricks' claim, the County first argues that this court lacks subject matter jurisdiction over this appeal because the Hendricks did not exhaust their administrative remedies as required by K.S.A. 2016 Supp. 74-2426(c)(4)(A). This version of the statute, which went into effect on July 1, 2016, requires that BOTA issue a full and complete opinion before a taxpayer can file a petition for judicial review. Therefore, the County claims, because the Hendricks did not request a full and complete opinion prior to appealing BOTA's summary decision to this court, they did not exhaust their administrative remedies as required by statute and this court lacks subject matter jurisdiction.

The Hendricks, however, point to the fact that at the time they filed their petition for judicial review, a different version of the statute was in effect. K.S.A. 2015 Supp. 74-2426 permitted a taxpayer to appeal a summary decision of BOTA without requesting a full and complete opinion. The Hendricks argue that because this version of the statute controls their appeal, this court has subject matter jurisdiction to consider their case.

BOTA issued its summary decision on February 11, 2016, and on March 11, 2016, the Hendricks filed a petition for judicial review with this court. At the time of BOTA's decision and the Hendricks' petition for review, K.S.A. 2015 Supp. 74-2426(c)(4)(A) provided that "[a]ny aggrieved person has the right to appeal any final order of the board issued after June 30, 2014, by filing a petition with the court of appeals or the district court." The 2015 version of the statute was unclear as to what constituted a "final order" of the board that was subject to appeal. Significantly, however, BOTA's summary

4

decision notified the Hendricks that they could appeal directly to this court rather than filing a petition for reconsideration or a request for a full and complete opinion.

Effective July 1, 2016, the legislature amended the statute to provide:

"(4) Appeal of an order of the board shall be to the court of appeals as provided in subsection (c)(4)(A), unless a taxpayer who is a party to the order requests review in district court pursuant to subsection (c)(4)(B).

(A) Any aggrieved party may file a petition for review of the board's order in the court of appeals. For purposes of such an appeal, *the board's order shall become final only after the issuance of a full and complete opinion* pursuant to subsection (a)." (Emphasis added.) K.S.A. 2016 Supp. 74-2426(c)(4)(A).

Thus, the 2016 version of the statute makes it clear that the taxpayer must request and obtain a full and complete opinion from BOTA prior to filing a petition for judicial review with this court. However, as noted above, the 2016 version of the statute did not go into effect until July 1, 2016, which is almost 5 months after BOTA issued its summary decision and 4 months after the Hendricks filed their petition for judicial review. The question then becomes:  Does the 2016 version of K.S.A. 74-2426 operate retrospectively? If, so then this court lacks jurisdiction over this case because the Hendricks did not exhaust their administrative remedies as they never sought a full and final opinion from BOTA.

Resolution of this issue involves statutory interpretation, so this court's review is unlimited. See *Dester v. Dester*, 50 Kan. App. 2d 914, 917, 335 P.3d 119 (2014). The general rule is that a statute operates prospectively unless the statutory language clearly shows that the legislature intended that it operate retrospectively or the change is procedural or remedial in nature rather than substantive. 50 Kan. App. 2d at 918-19. There is no indication from the language of the statute that the legislature intended the 2016 amendments to K.S.A. 74-2426 to operate retrospectively; the analysis therefore

5

turns to whether the amendments are procedural or remedial or whether they are substantive in nature.

> "Kansas recognizes a distinction between procedural and substantive changes in the law. [Citation omitted.] Procedural laws are those that concern the manner and order of conducting suits or the mode of proceeding to enforce legal rights. Substantive laws establish the rights and duties of parties. If an amendment is to a procedural statute and does not prejudicially affect the substantive rights of parties, the general rule is that all actions will be subject to the new procedure whether they accrued before or after the change in the law and whether or not a suit had been instituted." *In re Tax Grievance Application of Kaul*, 269 Kan. 181, 184, 4 P.3d 1170 (2000).

K.S.A. 2016 Supp. 74-2426 is clearly a procedural statute that describes the mechanism for conducting a tax appeal. See *In re Equalization Appeal of Camp Timberlake,* No. 111,273, 2015 WL 249846, at *4 (Kan. App. 2015) (unpublished opinion). Nonetheless, our Supreme Court in *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 225, 73 P.3d 753 (2003), made clear that even in the case of a procedural statute, our courts will not necessarily apply a statute retrospectively if it will abrogate some vested right. "In other words, without specifically articulating so, even in the situation of remedial or procedural statutes, Kansas appellate courts have looked beyond the nature of the statute and examined how the rights were affected, whether there was a substitute remedy, and the public interest furthered by the legislation." 276 Kan. at 225.

Here, application of the 2016 version of K.S.A. 74-2426 would completely eliminate the Hendricks' ability to appeal BOTA's decision in their case. After BOTA issued its summary decision, the Hendricks complied with the procedure set out in the version of K.S.A. 74-2426 in effect at that time and filed a petition for review without obtaining a full and complete opinion. If the amendments to the statute—which went into effect almost 4 months later—govern this case, then the Hendricks have no way to appeal BOTA's decision. A taxpayer has 14 days after the issuance of a summary decision to

6

request a full and complete opinion, and the taxpayer cannot appeal BOTA's decision to the court of appeals until BOTA issues that full and complete opinion. K.S.A. 2016 Supp. 74-2426(a), (c)(4)(A).

Thus, the Hendricks would be out of luck if the 2016 version of the statute applies; they missed the 14-day window to request a full and complete opinion from BOTA and would be precluded from appealing their case. Retrospective application of the 2016 amendments to K.S.A. 74-2426 completely eliminates the Hendricks' ability to appeal BOTA's adverse decision and leaves them without any substitute remedy. Finally, it is difficult to conceive of any public interest that would be furthered by the retroactive application of a statute dealing with the procedure for filing a tax appeal.

In *Camp Timberlake*, a panel of this court retrospectively applied the 2014 amendments to K.S.A. 74-2426, which permitted a party to appeal a Court of Tax Appeals (COTA) decision without filing a petition for reconsideration with COTA. 2015 WL 249846, at *4. At the time COTA's order was appealed, the version of the statute in effect required an aggrieved party to file a petition for reconsideration with BOTA prior to seeking appellate review. 2015 WL 249846, at *4. Under the statute, issues not raised in the petition for reconsideration were not preserved for appellate review. 2015 WL 249846, at *4. Camp Timberlake filed a petition for reconsideration as required by statute but did not raise a burden of proof issue that they later attempted to raise on appeal to this court. 2015 WL 249846, at *4.

On appeal, this court ruled that the 2014 amendment to K.S.A. 74-2426 was procedural in nature and retrospectively applied the amendment, which eliminated the requirement of a petition for reconsideration, and held that Camp Timberlake was not precluded from raising the burden of proof issue for the first time on appeal. 2015 WL 249846, at *5. However, the circumstances in the *Camp Timberlake* case are clearly

7

distinguishable from Hendricks' situation. In the *Camp Timberlake* case, retrospective application of the statutory amendment did not abrogate the taxpayer's vested rights.

To sum up, in a situation such as this one where the retrospective application of a statutory amendment would serve to completely bar the taxpayers' appeal—which was filed well before the enactment of the amendment—and leave them with no alternative remedy, fundamental fairness compels this court to decline to apply the amendment retrospectively. We conclude that this appeal is governed by the procedures set out in K.S.A. 2015 Supp. 74-2426, with which the Hendricks fully complied. Thus, this court has subject matter jurisdiction to hear the Hendricks' claim.

SUFFICIENCY OF THE EVIDENCE

The Hendricks' first claim on appeal is that BOTA's decision to uphold the County's valuation of their home is not supported by the evidence. The Hendricks assert that the County did not explain how it arrived at its valuation, which constituted a 13 percent increase from the 2014 tax year. Instead, the Hendricks argue that BOTA should have accepted their proposed valuation because their testimony was supported by County records and valuations of similar properties. According to the Hendricks, the County's testimony was not evidence and was based on "false factual premises."

The County does not directly address the Hendricks' specific arguments. Instead, it notes that in a dispute before BOTA concerning the valuation of residential property for taxation, K.S.A. 2015 Supp. 79-1609 places the burden of production of evidence on the County. The County notes that Kansas courts have "consistently held that compliance with K.S.A. [2015 Supp.] 79-503a meets the burden to establish fair market value and uniform and equal valuations." Thus, because the County asserts that it complied with K.S.A. 2015 Supp. 79-503a, it produced sufficient evidence to establish the accuracy of its valuation of the Hendricks' property.

8

Judicial review of BOTA decisions is governed by the Kansas Judicial Review Act (KJRA). K.S.A. 2015 Supp. 77-621; *Board of Saline County Comm'rs v. Jensen*, 32 Kan. App. 2d 730, 732, 88 P.3d 242, *rev. denied* 278 Kan. 843 (2004). The KJRA sets out the bases for which an appellate court may set aside a decision of BOTA. *In re Protests of Oakhill Land Co.*, 46 Kan. App. 2d 1105, 1114, 269 P.3d 876 (2012). The pertinent bases for which this court can grant relief from BOTA's decision here are: (1) The agency action is based on a determination of fact that is not supported by the appropriate standard of proof by evidence that is substantial when viewed in the light of the record as a whole; or (2) the agency action is otherwise unreasonable, arbitrary, or capricious. K.S.A. 2015 Supp. 77-621(c)(7)-(8); see *In re Equalization Appeal of Johnson County Appraiser*, 47 Kan. App. 2d 1074, 1084-85, 283 P.3d 823 (2012). If BOTA's decision is not supported by substantial evidence, it can be considered arbitrary or capricious. 47 Kan. App. 2d at 1085. The burden of proving the invalidity of BOTA's action is on the party asserting its invalidity—here, the Hendricks. See K.S.A. 2015 Supp. 77-621(a)(1).

When reviewing BOTA's factual findings for substantial evidence, appellate courts are to determine whether the evidence supporting BOTA's findings is substantial when considered in light of the record as a whole, taking into account both supporting and detracting evidence. *Sierra Club v. Moser*, 298 Kan. 22, 62, 310 P.3d 360 (2013). However, appellate courts do not reweigh evidence or engage in unlimited review. *In re Equalization Appeal of Prieb Properties,* 47 Kan. App. 2d 122, 126, 275 P.3d 56 (2012). To uphold BOTA's decision, "the evidence in support of it must be substantial, meaning that a reasonable person could accept it as being sufficient to support the conclusion reached." *In re Oakhill Land Co.*, 46 Kan. App. 2d at 1114. "To find a lack of substantial evidence, [this court] ha[s] said the decision must be so wide of the mark as to be outside the realm of fair debate." *In re Prieb Properties*, 47 Kan. App. 2d at 137.

At the hearing before BOTA, Weaver testified under oath that the County determined the value of the Hendricks' property by comparing it to the sales of three

9

comparable homes while taking into account any differences with the subject property. The comparable sales were provided in the County's Exhibit 1. Exhibit 1 shows that the subject property was built in 2004, is a conventional style home with 2,240 square feet of main floor living area and a total living area of 4,647 square feet. It has a construction quality rating of 5.0. Comparable home 1 was built in 2009, is a conventional style home with 3,199 square feet of main floor living area and a total living area of 4,540 square feet. Its construction quality rating is also 5.0. This house sold in 2013 for $2,400,000, and the County adjusted the sale price to $2,363,500 in order to match the characteristics of the Hendricks' home.

Comparable home 2 was built in 2003 and is also a conventional style home with 3,317 square feet of main floor living area and 5,911 square feet of total living area. Like the subject property, this property overlooks the golf course and has "similar views [and] desirability" as the Hendricks' home. This property has a construction quality rating of 4.33. Comparable home 2 sold for $2,282,500 in 2014 and the adjusted sale price was $2,415,400. Finally, comparable home 3 is a two-story conventional style home built in 2000 with 2,994 square feet of main floor living area and a total living area of 6,612 square feet. Its construction quality rating is 4.67. Comparable home 3 sold in 2014 for $2,700,000 with an adjusted sale price of $2,370,900. The County explained that comparable homes 1 and 3 are located further east than the subject property, which negatively affects property value. Both comparable home 2 and the subject property are located very close to the Mission Hills golf course, which increases their value because they are more desirable properties.

The County also provided a final value report of all conventional style homes built in 2000 or later in the same neighborhood as the subject property. These homes ranged in value from $1 million up to $3.7 million with an average value of $2.4 million. Finally, the County provided a sales report of all conventional style homes with total living areas of over 4,000 square feet that sold in the same neighborhood as the subject property. The

10

sale prices ranged from $570,000 for an old home with a construction quality rating of 4.33 and 4,416 square feet of total living space up to $4.4 million for a 7,135 square foot house with a construction quality rating of 5.67; the average sale price was $2.1 million.

The Hendricks presented evidence of the fair market value of their home, which they argued should be based on price per square footage. They argued that per the County's assessment, their property was valued at $514 per square foot; the comparable properties provided by the County had an average value of $441 per square foot. Thus, the Hendricks claimed that the County's valuation made their property "an outlier" because of the disparity between the price per square foot of their property and the comparable properties provided by the County. The Hendricks further argued that the comparable properties used by the County were not comparable enough. For example, the Hendricks claimed that comparable home 2 was not actually comparable because they had been inside the home and it has more upscale finishes than their home. Instead, the Hendricks urged BOTA to use the comparable properties it provided because they were sold closer to the 2015 tax year and they were located closer to the Hendricks' home.

After hearing all the evidence and reviewing the parties' exhibits, BOTA found that the County's appraisal was the best evidence of the fair market value of the Hendricks' property and upheld its valuation of $2,389,500. While couched in terms of a lack of sufficient evidence, the Hendricks' argument is really just a claim that BOTA incorrectly weighed the evidence. As stated above, this court does not reweigh evidence; it simply determines whether the evidence supporting BOTA's findings is substantial when considered in light of the record as a whole, taking into account both supporting and detracting evidence. *Moser*, 298 Kan. at 62. See *In re Equalization Appeal of Geary Cty. Appraiser*, No. 110,013, 2014 WL 1612570, at *5 (Kan. App. 2014) (unpublished opinion) ("[B]oth parties presented valid appraisals, testimony, and evidence to [B]OTA. [B]OTA found that the comparable sales listed in the Taxpayer's appraisal were the most useful for valuing the property. We do not reweigh the evidence, and we find the

11

evidence sufficient to support [B]OTA's decision."). Here, the record contains substantial evidence supporting BOTA's decision to accept the County's valuation of the Hendricks' home.

COMPLIANCE WITH K.S.A. 2015 SUPP. 79-503a

The Hendricks next claim that the County violated K.S.A. 2015 Supp. 79-503a by failing to consider all comparable sales data available. Specifically, the Hendricks argue that instead of the three comparable homes the County used, the County should have compared the Hendricks' property to the comparable sales "that were the closest in time to the valuation date, closest in size, and closest in location to [the] subject property."

The County disagrees and argues that because it complied with K.S.A. 2015 Supp. 79-503a by using the sales comparison approach to appraise the Hendricks' home, it met its burden of production. The County notes that it chose three sales it thought were comparable to the Hendricks' property, the Hendricks selected three different sales it thought were more comparable, and BOTA accepted the County's sales comparison analysis; thus, the County asserts that the Hendricks' argument here is merely a disagreement with how BOTA weighed the evidence.

As discussed above, appellate review of BOTA decisions is governed by the KJRA. K.S.A. 2015 Supp. 77-621; *Jensen*, 32 Kan. App. 2d at 732. This court can grant relief from a BOTA decision if BOTA erroneously interpreted or applied the law. K.S.A. 77-621(c)(4). This court can also grant relief if BOTA's decision was "based on a determination of fact . . . that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole" or if the decision was otherwise unreasonable, arbitrary, or capricious. K.S.A. 2015 Supp. 77-621(c)(7)-(8). The burden of proving the invalidity of BOTA's action is on the party asserting its invalidity. K.S.A. 2015 Supp. 77-621(a)(1).

12

K.S.A. 79-501 dictates that "[e]ach parcel of real property shall be appraised at its fair market value in money." Fair market value is defined as "the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting." K.S.A. 2015 Supp. 79-503a. The statute then goes on to provide a nonexhaustive list of factors for the appraiser to consider when valuing the property, including: the location and size of the property, the cost of improvements, the sale value on the open market, and of particular relevance here, "comparison with values of other property of known and recognized value." K.S.A. 2015 Supp. 79-503a(b), (c), (e), (i), and (k). It is the duty of the county appraiser to produce evidence to "demonstrate by a preponderance of the evidence" that its valuation is correct. K.S.A. 2015 Supp. 79-1609.

The Hendricks are essentially making the same argument as they did above, only now, instead of arguing the County did not provide any evidence to support its valuation, the Hendricks are claiming that the evidence the County relied on violated K.S.A. 2015 Supp. 79-503a. However, the County complied with the statute because it valued the Hendricks' property by comparing it with the values of other similar properties as directed by K.S.A. 2015 Supp. 79-503a(k). As discussed above in detail, the County selected three comparable properties and adjusted the prices taking into account any differences with the subject property, including "total living area, above grade and below grade, bathroom count, [and] conditional issues."

The County also considered the effect of the property's location on its value pursuant to K.S.A. 2015 Supp. 79-503a(c). The Hendricks' property is very close to the Mission Hills golf course and the County explained that a "major driving factor of value in Mission Hills, Kansas is location." Homes close to the golf course have a higher fair market value than homes located farther east towards State Line Road. Moreover, the County considered the improvements to the subject property. The subject property is a newer-built home, but in 2013 its bathrooms were updated and some of the wood floors were replaced and updated. Therefore, the County explained, "[E]ven though it's a newer-

13

built home, it has had some updates and some upgrades, as it has aged." Finally, the County considered the size of the property pursuant to K.S.A. 2015 Supp. 79-503a(b). The County explained that the subject property has five bedrooms, four and a half bathrooms, and a total living area of 4,647 square feet. Clearly, the County complied with the requirements of K.S.A. 2015 Supp. 79-503a in valuing the subject property.

## KANSAS CONSTITUTION'S UNIFORMITY REQUIREMENT

Finally, the Hendricks claim that the County violated the Kansas Constitution because its appraisal is "fundamentally inconsistent" with 2015 appraisals of similar homes. The Kansas Constitution requires a uniform and equal rate of assessment and taxation. The Hendricks assert that other similar homes were valued at a lower price per square foot than their home. They also assert that none of the comparable homes were appraised at a higher value than in the prior tax year, while their property valuation was a 13 percent increase from the 2014 tax year. Because the County failed to explain its inconsistencies, the Hendricks argue that it failed to uniformly appraise their home in violation of Kansas law. In response, the County asserts that it complied with K.S.A. 2015 Supp. 79-503a, which satisfies the Kansas Constitution's uniformity requirement.

Pursuant to the KJRA, which governs the scope of judicial review of BOTA's actions, this court can grant relief if it determines that BOTA's "action . . . is unconstitutional on its face or as applied." K.S.A. 2015 Supp. 77-621(c)(1). The burden of proving the invalidity of BOTA's action is on the party asserting its invalidity. K.S.A. 2015 Supp. 77-621(a)(1).

Article 11, § 1(a) of the Kansas Constitution (2015 Supp.) states that "the legislature shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation." Accordingly, the Kansas Legislature adopted statutes that dictate how property is to be valued in compliance with the Kansas Constitution's

14

uniform and equal rate of assessment requirement. K.S.A. 2015 Supp. 79-1609 requires the County to prove by a preponderance of the evidence the validity of its valuation of residential property for taxation purposes. K.S.A. 2015 Supp. 79-501 requires the County to appraise each parcel of real property to determine its fair market value. Finally, K.S.A. 2015 Supp. 79-503a defines "fair market value" and provides a nonexclusive list of factors for the appraiser to consider when determining the value of residential property for taxation purposes.

"""When determining the validity of an assessment of real property for uniformity and equality in the distribution of the burdens of taxation, the essential question is whether the standards prescribed in K.S.A. 79-503a have been considered and applied by the taxing officials."""' *Krueger v. Board of Woodson County Comm'rs*, 31 Kan. App. 2d 698, 702, 71 P.3d 1167 (2003), *aff'd* 277 Kan. 486, 85 P.3d 686 (2004). Thus, if the County complied with K.S.A. 2015 Supp. 79-503a, the uniform and equal taxation requirement of the Kansas Constitution is satisfied. See 31 Kan. App. 2d at 702; see also *Marriott Corp. v. Board of Johnson County Comm'rs*, 25 Kan. App. 2d 840, 845, 972 P.2d 793 (1999).

As discussed above, the County complied with K.S.A. 2015 Supp. 79-503a when determining the fair market value of the Hendricks' property. It compared the Hendricks' home with three other comparable homes while considering the subject property's location, size, and improvements. The Hendricks argue that the County failed to uniformly appraise their property because the resulting price per square foot is greater than other comparable homes. However, price per square footage is not the only relevant factor. In fact, K.S.A. 2015 Supp. 79-503a does not require the County to consider the price per square footage of a property in determining its fair market value, nor is price per square footage even one of the accepted approaches to determining fair market value. See *In re Equalization Appeal of Johnson County Appraiser*, 47 Kan. App. 2d at 1087 ("The

15

factors listed in K.S.A. [2015 Supp.] 79-503a set forth the three approaches to establishing value: "'the sales approach, the cost approach and the income approach.'"").

Next, the Hendricks claim that the County failed to uniformly appraise their property because the valuation of their home increased by 13 percent, while the values of other comparable properties decreased. This court addressed an identical argument in *In re Equalization Appeal of Whittaker*, No. 109,155, 2013 WL 4566422 (Kan. App. 2013) (unpublished opinion). In that case, the taxpayers argued that Johnson County's valuation of their home violated Article 11, § 1 of the Kansas Constitution because the valuation of their property increased by 14 percent, but the valuations of other comparable homes in their neighborhood declined by an average of 9.34 percent. 2013 WL 4566422, at *1.

This court first noted that "[a]lthough couched as a constitutional violation, the [taxpayers'] basic challenge is nothing more than an argument that [B]OTA chose to follow the County's valuation . . . over the taxpayers' contention based on a statistics-based analysis of the changes in taxable valuations of six properties located close to the subject property." 2013 WL 4566422, at *3. This court went on to hold that "the County's evidence and testimony followed the requirements of K.S.A. 79-503a(k). . . . It is clear from the County's evidence that the subject property's location, size, makeup of the house, improvements, and comparison to the comparable 2011 sales was considered and legally applied." 2013 WL 4566422, at *4. Thus, this court concluded there was substantial evidence supporting BOTA's decision. 2013 WL 4566422, at *4.

The same reasoning applies with equal force here: The Hendricks' argument that the County failed to uniformly assess their property because the valuations of other comparable homes decreased while the valuation of their home increased is merely an argument that BOTA should have utilized their valuation methods over those of the County. Again, this court does not reweigh evidence. See *In re Prieb Properties,* 47 Kan.

16

App. 2d at 126. The County complied with the requirements of K.S.A. 2015 Supp. 79-503a, and there is substantial evidence supporting BOTA's decision to uphold the County's valuation of the Hendricks' property. Accordingly, the County's valuation of the Hendricks' property did not violate the Kansas Constitution.

Affirmed.